To: Jose Marinez--Compassionate Release--Pg. 1
Inmate Work Assignment: Unit Orderly

United States District Court

Jose Martinez
   Petitioner

Southern District of New York

Crim. No. 1:96CR00959--002--MGC

v.

United States of America
   Respondent

---

## MOTION FOR SENTENCE REDUCTION/COMPASSIONATE RELEASE UNDER 18 U.S.C. SECTION 3582(c)(1)(A)(i)

---

Comes now Jose Martinez, hereinafter referred to as Martinez or petitioner, proceeding Pro Se and prays this Honorable Court apply liberal construction to the instant filing as afforded all pro se litigants/inmates (see Haines v. Kerner, 404 U.S. 519 (1972)). Martinez is respecftfully petitioning this Honorable Court for a reduction in his sentence under Section 3582(c)(1)(A)(i) which allows such a reduction if the Honorable Court finds it warranted by "extraordinary and compelling circumstances". Martinez, who was arrested for his crime(s) over his 26 years ago, seeks a reduction of his sentence to time served, or any reduction this Honorable Court deems fit after considering the instant motion, to be followed by the Court-imposed period of supervised release.

### INTRODUCTION

People grow, evolve and because conditions and circumstances, change it is virtually impossible to make sound decisions when first imposing a sentence about precisely how long someone should spend behind bars. But that is exactly how the Federal justice criminal system works.

Judges are required to act as if they are omniscient and the prison terms they impose are for all intents and purposes--final. Mr. Martinez has done everything within his power to rehabilitate himself in the past 26 years as is demonstrated by the record. He has had no disciplinary issues, and has completed a very respectable twenty-three (23) redevelopment, educational and vocational programs. They are as follows:

| Program Description | Year |
|---|---|
| 1. Introduction to Parenting | 1997 |
| 2. Intro to Physical Fitness | 1997 |
| 3. Orientation, Mon-Wed, All Day | 1997 |
| 4. ESL RM 10, Mon-Fri, 1230-330 PM | 1997 |
| 5. GED Self-Study | 1999 |
| 6. ESL Refresher Class | 2000 |
| 7. Spanish GED | 2000 |
| 8. Leisure ACT/Video Class 2001 | 2001 |
| 9. Leisure ACT/Instr. Music 2001 | 2001 |
| 10. Leisure ACT/ Instr. Music 2002 | 2002 |
| 11. Leisure ACT/ Music Listen 2002 | 2002 |
| 12. GED in-Cell Study/ Special Mgmt | 2004 |

13. REC ADV Stress    2005
14. POS Mental Attitud TH 630-730P    2005

Inmate Work Assignment: Unit Orderly

| Program Description | Year |
|---|---|
| 15. Cardiovas Cycl. M/W/F 1830-1930 | 2010 |
| 16. ISDA--Interview & Initial CLA | 2012 |
| 17. Beginning Seniors Fitness | 2016 |
| 18. Advanced Seniors Fitness | 2016 |
| 19. Beginning Seniots Fitness | 2016 |
| 20. Parenting (Spanish Language) | 2017 |
| 21. Intermediate Spin Class | 2018 |
| 22. Crotchet Class | 2018 |
| 23. ACE Legal Research | 2019 |

Due to the First Step Act, A District Court can now grant compassionate release/reduction in sentence under Section 3582(c)(1)(A)(i) upon its own finding that relief is warranted by extraordinary and compelling circumstances. Martinez feels that relief is warranted for the following reasons

1. Martinez's sentence is longer and more excessive than similarly-situated defendants around the country and longer than the sentence that would be imposed upon him if he were sentenced to day under current law, precedent of this Honorable Court and District, as well as in light of his specific circumstances today.

2. Martinez has completed a number of evidenced-based rehabilitative classes that are designed not only to rehabilitate inmates like Martinez, but reduce his risk of recidivism upon his release from custody. After his inmate assessment, which is conducted by his Unit Team, Martinez is at a low risk of recidivism upon his release due to his rehabilitative accomplishments since he's been incarcerated, as well as maintaining clear conduct during the course of his incarceration. The Section 3553(a) factors, when considered today, also favor a reduction in Martinez's sentence.

3. Martinez's sentence is, has been and continues to be, much more punitive than convicted defendants in his specific circumstances deserve, as well as more severe and punitive than Martinez had anticipated and this Honorable Court had intended when originally setencing Martinez, as due to the recent pandemic(and continuing modified/lockdown schedule used by the Hazelton administration for conveninece) that Martinez has suffered through the past 3 + years.

## RELEVANT BACKGROUND

Jose Martinez was born April 28, 1956 in Puerto Rico. He was born into a large family that for all intents and purposes was loving and provided the basics at a minimum level. But it was still "Puerto Rico" as Martinez explains. He was enticed by his brother Julio to come to New York City, the Big Apple, where "opportunties abound" and the "roads are paved with gold". Obviously this Honorable Court understands these are hyperboles, but the Court can appreciate the sentiment much the same. So Martinez at the tender age of 18 managed to get himself to New York City where he also discovered things were not as idyllic as he was led to believe.

To: Jose Martinez--Compassionate Release--Pg. 3
Inmate Work Assignment: Unit Orderly

He struggled between jobs and the neighborhoods he lived in were "rough" to say the least.

But when one considers the factors outside his homelife, in his neighborhood, from the time he was a teenager until the time of his crime, a 39 year-old man, those risk factors haven't changed. And unfortunately, unaddressed trauma in the community and an individual; it turns into complex trauma in an adult in time. And what is noticeable is that the risk factors that contributed to Martinez's life being deferred, the fact that those risk factors haven't changed in that neighborhood, in that long period of time, indicates something about environment. Often the quick knee-jerk reaction is to say certain individuals have a "propensity for violence", and they just "can't help themselves".

But considering the trauma that was going on in Martinez's 'home life' and the trauma that was going on in that neighborhood and that it hadn't changed throughout the course of his life; it tells this Honorable Court that Martinez, unfortunately, is a product of a bad environment.

Now that environment, when you have trauma that is unaddressed, it creates a hypervigilant behavior sometimes in the community or even individuals. There's data and there's science on it. And if one believes the government's theory of this case, that this happened because of some of the violence he received--that violence that permeates some of our communities, it isn't just people predisposed to violence. It is because violence becomes a certain language in that community.

And one of the things about when one is in an environment where one has the risk factors out weighing the protective factors--there are no lacrosse fields, there are no soccer fields, and there are no community centers--there are few things and institutions to catch young people when they're falling through the cracks, one begins to have a different perspective about the community in which Jose Martinez found himself in.

In a recent New England Journal of Medicine article, it stated Psychologists are learning that decision-making in the brain, especially in the matters of "right" and "wrong" is still developing in the human brain from ages 18-25. Also it is estimated that as much of 30% of the U.S. population has one or more undiagnosed mental and psychological disorders and addictions, but the link from these disorders to criminal behavior is not really understood. According to Statford Career Institutes' textbook 'Drugs and Society'(pg. 30); it IS known that 45% of all federal prisoners DO HAVE some form of mental illness. In general the U.S. has just started to scratch the surface in understanding the intricacies of mental illness, and as a result the U.S. tends to, though some argue inadvertently, criminalize mental illness.

It is unfortunate that the U.S. Government can spend billions of dollars developing bombs that can hit a target within on the inches on the other side of the world...but they are neophytes when it comes to understanding the human brain and all its facets. That 3lbs. that is in all our skulls that controls all actions: 'good' and 'bad'. (It might be something we human beings need to know about.)

One of the phenomenons that has affected many communities is that the person who is in the lower-half of the socio-economic totem pole, wrongly or in error, believes that criminality is a way to get out of the trappings of poverty.

Inmate Work Assignment: Unit Orderly

It becomes such a reality that now there is actually a genre of music that celebrates that. And to bring it home a little because well, the Super Bowl has the largest television audience globally. And this is not to go too far, but when one lives in a society where deprivation has dismantled and destabilized communities, such as the one Martinez fell into in New York; and a people at large can sit and watch a football game on Sunday and watch men Crip walk as part of the entertainment(2022), it shows one that something is really off about how the community is doing and how they're approaching and/or looking at crime. How they are addressing the protected factors.

Even with all the aforementioned taken into consideration, Mr. Martinez is NOT a lost cause by any means. He has a son, Jose Martinez, Jr. and four gandchildren that he adores with all his being. To this day he maintains regular contact with Jose, Jr. and his four grandchildren.

Martinez, during his years of incarceration, has found God and does his best to provide all the love and support, as much as possible, to Jose and his four grandchildren. They have maintained a very close relationship throughout his incarceration. Martinez has long ago realized his mistakes and errors that getting caught up in criminal activities has caused himself and his loved ones. He has been living with these regrets ever since.

Since his incarceration, Martinez has taken advantage of every class and program available to him in his efforts at rehabilitation, as well as to educate himself with the tools needed for his successful reintegration back into society and to lessen his chances of recidivism upon his release. Martinez has fulfilled his financial responsibility to the court by paying off his assessment fee and restitution back in the year 2000. Should Martinez be released and whenever he is released he has stable home placement with his son and his four grandsons at their home in Pennsauken, New Jersey; all of whom would greatly appreciate his return home. Because of his age, he would be able to apply for SSI. But his son, Jose Jr. does well for himself and would have no problem affording his father's needs.

## ARGUMENT

i. This Honorable Court can resentence Martinez for the extraordinary and compelling reasons here.

With the changes made to compassionate release by the First Step Act, courts need not to wait for a motion from the B.O.P. to recommend reduction of a prisoner's sentence under 18 U.S.C. Section (c)(1)(A)(i) for "extraordinary and compelling reasons", and the reasons that can justify resentencing need not only involve medical, age-related, or family circumstances.

a. When Congress enacted Section 3582, it intended "extraordinary and compelling reasons" to include those other than medical, age, or family circumstances.

Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C. Section 3582 as part of the Comprehensive Crime Control Act of 1984. Section 3582(c) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reaons warrant such a reduction." 18 U.S.C. Section 3582(c)(1)(A)(i)(2018).

In 1984 Congress conditioned the reduction of sentences on the B.O.P. Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons. Id.

Congress never defined what constitutes an 'extraordinary and compelling reason' for sentencing under 3582(c). But the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress' initial goals in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guideline sentencing system". S. Rep No 98-225, at 52, 52 n. 196 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how individual; cases may still warrant a second look at resentencing:

> The Committee believes that there may be unusual cases in which an
> eventual reduction in the length of a term of imprisonment is justified
> by changed circumstances. This would include cases of severe illness,
> cases in which extraordinary and compelling circumstances justify a
> reduction of an unusually long sentence of the defendant was convicted
> have been later amended to provide a shorter term of imprisonment.

Martinez cites an out of circuit decision that he knows this Honorable Court is not bound by, but as guidance on how some courts around the country consider and decide motions for compassionate release/reduction in sentence for defendants situated similar to Martinez. Specifically, United States v. Daniels, 2022 U.S. Dist LEXIS 1743( E.D. LA Jan. 5, 2022), in where Daniels' Court found unique circumstances in the case. In addition to receiving a lengthier sentence that he would have under statutes amended by the First Step Act, the defendat has has no infractions or disciplinary issues while serving his sentence.

Based on the foregoing, Martinez prays this Honorable Court consider his instant request for a sentence reduction in light of the fact that if he were sentenced today, he would likely receive a sentence much less than the one he ultimately received based on the passage of the First Step Act. This Honorable Court's discretion is now to consider certain factors it was not permitted to prior to the passage of the First Step Act and the "changed circumstances" of Martinez's specific situation that he will continue to expound upon throughout.

2.] Martinez's evidenced-based rehabilitation accomplishments and changed circumstances warrant a reduction in his sentence.

Since his incarceration Martinez has utilized his time of incarceration to improve and rehabilitatte himself in an effort to increase his likelihood of successful reintegration back into society, as well as lessen his chances of recidivism upon his release. Specifically, Martinez has completed numerous hours of evidenced-based rehabilitation and recidivism-reducing classes and programs. He has also been and continues to be evaluated by his Unit Team who are responsible for advising and counseling Marinez on what programs and classes he needs to complete in order to succeed in his rehabilitative efforts and lessen his chances to recidivate upon his release. The specific inmate goals and programming is monitored closely by Martinez's Unit Team and documented by them. In Martinez's case, his inmate assessment regarding his chances of recidivism upon his release has been decreased to a "Low" possibility. This is due to Martinez complying with his Unit Team's long and short term goals designed to assist his rehabilitation

FROM: 21281112
TO:
SUBJECT: Jose Martinez--Compassionate Release--Pg 6-8
DATE: 04/17/2023 06:03:42 PM

These facts stated herein constitute "changed circumstances" and although they are in evidence of his rehabilitation Martinez understands his rehabilitation "ALONE" cannot be considered under the compassionate release/reduction in sentences according to 3582(c)(1)(A)(i) statute, but can be considered in conjunction with other reasons. Those are stated herein and throughout. (See United States v. McCoy, 981 F. 3d. 271(4th Cir. 2020))

3.] Martinez's sentence is more punitive than originally intended by Congress and this Honorable Court for the crime(s) of which Martinez stands convicted and sentenced.

As this Honorable Court is no doubt aware, the recent pandemic has/had reeked havoc on the entire world. However inside the institutions, including the one Martinez was housed in (Hazelton FCI), the toll on the inmate population was more than just physical, it was psychologically and emotionally devastating. These effects are still apparent in Martinez to this day and will be long-lasting. Specifically throughout the pandemic, the institution was on a modified/lockdown operation schedule, as well as all other inmates at his institution, were confined to their cells 24 hours a day, with the exception of coming out for 10 minute showers on Mondays, Wednesdays, and Fridays. During these times, during the lockdowns which lasted for months Martinez was denied access to psychological services/programs, recreational services, phone calls and emails to his family and loved ones. This only exacerbated his already severe clinical depression and anxiety. Martinez was denied access to any and all programs designed for and geared toward rehabilitation and recidivism-reducing.
United States v. Sherrod, No. 19-20139, 2021 U.S. Dist LEXIS 147643, 2021 WL 3473236 at *3 (E.D. Mich. Aug. 6 2021) (noting that the placement of an incarcerated person in quarantine(lockdown) for administative convenience was an "extreme" and "disturbing" measure.)

## INADEQUATE MEDICAL CARE

The following is the list of medications and a rather lengthy litany of Medical challenges/conditions facing Martinez:

* Albuterol Inhaler
* Aspirin
* Atorvastin
* Tamsulosin
* Cancerous Polyps removed--8/30/2021
* Skin Irritations
* Full body rash: Erythema
* Hemorrage to Left Eye 06/17/2021
* After Colonoscopy--Concern for Shigellosis(Returning Cancer)
* Ova and Parasites
* Disc degeneration within the lower thoracic spine with tiny osteophytes anteriorly
* There are tiny osteophytes at L2-L3, L3-L4, and L4-L5
* Moderate Right L5-S1 lumbar facet arthnopathy
* Bilateral Knee Pain
* Right Knee--The bones are osteopenic
* Metatarsus primus varsusaid hallux valgus with soft tissue bunion formation
* Osteoarthritis of the Great Toe MTP joint
* Right Achilles tendon enthesophyte
* Right plantar calcaneal bone spur
* Arterial calcifications seen bilaterally within the ankles and feet
* Asthma exacerbated with productive cough and wheezing
* Lower Bunk Pass Required 12/17/21
* Betamethasone Dip--45 GM
* Umbilical Hernia
* History of fever, chills, weakness ad chest pain
* Lipitor 20 mg PO daily
* Asmanex 220 mcg/act
* Flomax 0.4 PO bed time

* Citrate of Magnesia
* Tamsulosin HCl o.4 MG Cap
* Mometasone Furoate Inhaler 220 MCG/Inh
* Second Colonoscopy--8/30/2021
* COPD with Asthma
* High Blood Cholesterol
* Cracked Teeth
* High Blood Pressure
* Fracture of Scapula
* Rash and other skin eruptions
* Seborrheic dermatitis
* Chronic obstructive asthma with COPD
* Hyperlipidemia
* Enlarged prostrate with lower urinary tract symptoms
* Esophageal reflux
* Eye-Glasses
* Arch supports and special orthopedic shoes
* Valgus deformity
* Pneumonia
* Allergic rhinitis
* Acute Sinusitis
* External hemorrhoids
* 2 Hernias--Navel and Colon--Colon Hernia has been left unrepaired for 14 years. B.O.P refuses to operate

Even though the pandemic is out of the headlines and considered "over"(it's really not but that's for another time/discussion). Hazelton still maintains a modified/lockdown schedule. The administration claims it's for lack of staff, but they can't be believed. Included for your Honor's perusal is an email about the administration LYING to West Virginia's Senator Joe Manchin. The Senator had been receiving several complaints about Hazelton; the most egregious concern was about the continual and extended lockdowns. In a Congressional Inquiry a representative of Hazelton testified that Hazelton was only locked down from Oct. 27, 2022 to Dec 1, 2022 for all of 2022. That statement is strange for two reasons: 1) It's a lie and 2) The institution was only locked down two weeks in November of 2022. (So why lie about it?) But the reality is that Hazelton was locked down 46.3% of the time in 2022. Martinez has included copies of notices of previous Wardens from other months in 2022 discussing various lockdowns. The extensive lockdowns have caused suicides to increase exponentially and there is no psychological support of any substantive nature.

What's equally frustrating is that the staff and the B.O.P. don't appear to be able to tell the truth. Martinez directs your Honor to the 2-13-23 edition of Federal Legal News which basically accuses the B.O.P of being 'Addicted to Lying'. The 'highlights' are paragraphs 1-7.

Also in a more recent edition of federal Legal News (a copy is provided); it points out that the B.O.P. lying about an inmate's medical issues and/or down playing the severity due to lack of staff and/or competency is actually a FEDERAL CRIME.

When Georgia Congresswoman Marjorie Green visited those jailed/detained from the Jan. 6th Insurrection she stated(12/17/22) she would "never forget" what she witnessed. Greene defined the defendants as "broken souls that looked like they thought everybody had given up on them, and they'd probably had given up on themself". She said she "was appalled at much of it." "Many of them are denied medical treatment" she noted. "One of the men had a finger that was turned sideways, from an injury he received on Jan. 6 and they refused to fix his finger. Another man, an elderly guy, his whole arm was purple, and "You're denied things that are just basic human rights".

Judges are beginning to take into account whether inadequate or non-existent medical treatment should be used as further justification for compassionate release. In the year between the enactment of the First Step Act and the arrival of the Covid-19 pandemic, at least two judges employed similar reasoning in 3582(c) rulings that considered the implications of serious illness for 3553(a)'s sentencing purposes and parsimony requirement. See United States v. Beck, 425 Supp. 3d 573, 586 (M.D.N.C. 2019): "She served nearly two years of her [prison] term with invasive breast cancer, and the B.O.P. has repeatedly mismanaged her care, including medical appointments for so long that neither chemo nor radiation therapy would be effective...' This means that [her] sentence has been significantly more laborious than that served by most inmates...[and] further incarceration in [her] condition would [therefore] be greater than necessary to serve the purposes of punishment sent forth in 3553(a)". Also consider United States v. Gray, 416 F. Supp 3d 784, 790 (S.D. Ind. 2019): "Mr. Gray has served much of his sentence while seriously ill. This means that his sentence has been significantly more laborious and difficult than that served by most inmates...[and] further incarceration in his condition would [therefore] be greater than necessary to serve the purposes

of punishment set forth in 3553(a)".

Similar experiences and effects were in fact noted in a recent decision in United States v. Hatcher, No. 18-CR(109(KPF)) 2021 U.S. Dist LEXIS 74760, 2021 WL 1535310 at *3(S.D. N.Y. April 19, 2021) in where the sentencing judge considered the impact of the circumstances had on a person's physical and mental health when granting compassionate release. As well as how it can impact the consideration of Section 3553(a) factor's primary goal,i.e."Sentence not greater than necessary" 28 U.S.C. Section 991(b) encourages flexibility in Section 3553(a) factors for Section 991(b)(1)(B) Aggravating or Mitigating Circumstances of or to a degree not adequately taken into consideration by the Sentencing Commission like a global pandemic and/or continual lockdown.

Inmate Work Assignment: Unit Orderly

2019 U.S. Dist LEXIS 119713--Franklin Veras v. Dr. A. Jacobson and Dr. Udeshi v. United States 2nd Circuit. Pursuant to 42 U.S.C. 1983--indifference to medical needs is a violation of the Eighth Amendment. The Eighth Amendment forbids 'deliberate (2019 U.S. Dist LEXIS 6} indifference to serious medical needs of prisoners. Spanone v. N.Y. State Dept of Corr. Servs. (Quoting Estelle v. Gamble, 429 U.S. 97, 104 97 S. Ct. 285, 50L. Ed. 2d 251(1976). To state a deliberate indifference claim, plaintiff must plausibly allege (1) "that he suffered sufficiently constitutional deprivation and (2) that defendants "acted with deliberate indifference". Feliciano v. Anderson, No. 15-CV-4106, 2017 U.S. Dist LEXIS 47893, 2017 WL 118747, at *8(S.D. N.Y. Mar. 30 2017).

In United States v. Dones--2021 U.S. Dist LEXIS 243953, the defendant Dones has the following litany of serious health complications--including obesity, cirrhosis, solitary kidney, depression and anxiety, latent tuberculosis, asthma, shingles, sweeling of lower leg, periodontic disorders(bleeding gums), gall stones, liver disease, blurred vision, a ventral hernia, a platelet disorder, a full-body rash and a kidney infection. The defendant was housed at the same institution as Martinez--Hazelton FCI and was granted compassionate release on December 22, 2021.

Martinez has been suffering with a colon hernia for 14 years and the B.O.P. refuses to operate. This plus the totality of all the issues listed in Inadequate Medical Care Martinez prays this Honorable Court will grant him compassionate release.

## ARGUMENT PART II

The Commission created several categories of qualifying reasons: (A) "Medical Conditions of the Defendant", including terminal illness and other serious conditions and impairment; (B) "Age of the Defendant", for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 76% of term of imprisonment;

(C) "Family Circumstances" where a child's caregiver or spouse dies or becomes incapacitated without an alternate caregiver; and (D) "Other Reasons", when the Director of the B.O.P. determines there is "an extraordinary and compelling reason other than or in combination with, the reasons described in subdivisions (A) through (C)". U.S.S.G. Section 1B1.13 comment. n.1 The Commission also clarified that the extraordinary and compelling reasons "need not to have been foreseen at the time of sentencing in order to warrant a reduction in the term of imprisonment". U.S.S.G. 1B1.13 comment. n.2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the Sentencing Court, [that fact] does not preclude consideration for a [sentence] reduction". Id.

Consistent with the text and legislative history of Section 3582(c), the Commission concluded that reasons beyond medical, age-related, and family circumstances could qualify as "extraordinary or compelling reasons" need not be based on changed circumstances occurring after the initial sentencing of the defendant.

C. Martinez's case presents extraordinary and compelling circumstances.

Three extraordinary circumstances combine in Martinez's case to justify a sentence reduction under Section 3582(c)(1)(A)(i).

1.] Martinez's sentence is disproportionate to similarly and worst-situated defendants in this Honorable District.

At the time of Martinez's sentencing, his prior convictions enhanced his possible sentencing and a result, Martinez was sentenced to an extreme sentence of Life plus 5 years. Martinez avers that his criminal history is not as excessive as many defendants who receive less sentences than what he received.

Specifically, during the fiscal year 2019, the Sentencing Commission compiled statistics for certain crimes. For instance, for the crime of robbery, the average national sentence was 109 months (9 years plus 1 month); for murder, 255 months (21 years, 4 months). For a similar crimes, Martinez received the equivalent of 540 MONTHS (according to a calculation on his Unit team report) which is essentially 315 MONTHS LONGER THAN THE NATIONAL AVERAGE. For child pornography, a crime against society's most innocent victims, the average sentence is 103 months (8 years, 7 months); and for "Extortion/Racketeering", organized crimes offenses, the average sentence is/was 32 months (2 years, 8 months).

For a category labelled "National defense", which is crimes against our very country's national security and according to the Commission's Sourcebook including crimes of "treason, sabotage, espionage, evasion of military service, prohibited financial transactions and exports, providing material support to designated foreign terrorists organizations, biological and chemical weapons, and weapons of mass destruction" the average sentence is 24 months (3 years, 6 months.)

Inmate Work Assignment: Unit Orderly

That means that Martinez received a sentence 41 YEARS LONGER THAN SOMEONE WHO ASSISTED AL-QAEDA, THE TALIBAN AND/OR OTHER TERRORIST ORGANIZATIONS.

Martinez does not seek to diminish the severity of his crimes of conviction, he only seeks to put into perspective the disparity between his sentence, the sentence of similarly and worst-situated defendants and the sentence he would likely receive if he were sentenced today. As the Honorable Court is aware, the Section 3553(a) factors are designed to avoid and prevent unwarranted sentencing disparities among "similarly-situated defendants" that is even more so amongst defendants that are worst-situated and when defendants receives a sentence MORE severe than those worst-situated defendants. Like Judge S. Huvelle, U.S. District Court Judge for the District of Columbia stated in her opinion in United States v. Price, 2020 U.S. Dist. LEXIS 184784, Crim. No 07-152-06(ESH) decided on October 6, 2020, in relevant part, "...there was no fair way to mitigate the sentence disparity...Section 3553(a) provides that in determining an appropriate sentence, a court must take into account...a sentence must be 'sufficient but not greater than necessary'...Moreover, although he is housed in a medium-security facility, the government acknowledges that his prison record does not include any history of violent infractions..." Id,

Rather than having the parole Commission review every sentence focused only on an offender's rehabilitation, Congress decided that Section 3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment[.]" Id at 56.

Congress intended for situations listed ihn Section 3582(c) to act as "safety valves for modification of sentence", Id, at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the now-abolished parole system. This particular safety valve would "assure the availibility of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guideline" Id. Noting that this approach would keep "the sentencing power in the judiciary where it belongs", rather than with a federal parole board, the statute permitted "later reviews of sentences in particularly compelling situations". Id

Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individual basis to correct fundamentally unfair sentences. And there is no indication that Congress limited the safety valve of Section 3582(c)(1)(A) to medical or age-related release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence". S. Rep 98-225, at 55-56. Yet, by statute, the courts could act only upon motion of the Bureau of Prisons. 18 U.S.C. Section 3582(c)(1)(A)(i)(2018).

b. The Sentencing Commission concluded the responsibility for determining what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission("Commission"). See U.S.C. Section 994(t). (" the Commission...shall describe what should be conidered extraordinary and compelling reasons for sentence reduction including the criteria to be applied and a list of specific examples"). Congress provided one limitation to the delegation of authority: "[r]ehabilitation of the defendant ALONE shall not be considered an extraordinary and compelling reason". Id. (emphasis added.) Congress no doubt limited the ability of rehabilitation ALONE to constitute extraordinary circumstances so that sentencing courts could use it as a full and direct substitute for the abolished parole system. Congress, however contemplated that rehabilitation could be considered with other extraordinary and compelling reasons sufficient to resentence people in individual cases. Indeed, the use of the modifier "alone" signified just the opposite: that rehabilitation could be used in tandem with other factors with other factors to justify a reduction.

All the cases and the arguments raised by Martinez herein regarding the pandemic, the cruel and unusual punishment he witnessed and experienced, the inadequate and indifferent medical care, and Section 3553(a) factors as supported by recent District Court decisions weigh in favor of constituting "extraordinary and compelling reasons" to grant Martinez relief.

## CONCLUSION

The following was published by the Sentencing Commssion in mid-January, 2023: "the defendant presents other circumstances or a combination of circumstances" such as 'experiencing a serious deterioration in physical or mental health because of the aging process...he or she should be eligible for release'. As a result of changes in the defendant's circumstances [or intervening events that occurred after the defendant's sentence was imposed], it would be inequitable to continue the defendant's imprisonmenty or require the defendant to serve the full length of the sentence. (or) The defendant presents an extraordinary and compelling reasons other than, or in combinations with, the circumstances described.

Martinez understands than no one factor raised herein may constitute "extraordinary and compelling reasons" warranting a reduction in his sentence in this Honorable Court's views, however; it is his hope that factors raised herein in conjunction/tandem with one another, as well as martinez's rehabilitative efforts and exemplary disciplinary record constitute "extraordinary and compelling reasons" warranting a reduction in his sentence.

When viewing Martinezz as the man he is today( it is probably safe to say, NO ONE is the same as they were 27 years according, including anyone in this Honorable Court that may read this instant motion).

It is obvious and clear from his record that Martinez is not the same man he was when he was sentenced by this Honorable Court at the time of his conviction and original sentence. (See Pepper v. United States, 562 U.S. 476(2011)). Therefore, Martinez prays this Honorable Court sees him as the man he is today, under his current changed circumstances while taking into consideration certain mitigating factors that exist today there were not in existence at the time of Martinez's original sentencing and were unforeseen at the time of Martinez's original sentencing. Martinez has raised these factors herein and prays this Honorable Court gives them due and proper consideration under the applicable law today. In United States v. Chambers, 956 F. 3d 667(4th Cir. 2020) the Appeals Court opined that a District Court "may consider post-sentencing conduct within the First Step Act framework." Petitioner Martinez prays this Honorable Court follows such guidance and consider post-mitigation factors and conduct raised herein.

## EXHAUSTION REQUIREMENT

Martinez submitted a request to the Warden at his institution (Warden McCaffrey) requesting the Warden to file a motion on his behalf with this Honorable Court seeking a reduction in his sentence on or about March 4, 2022. The Warden denied his request; therefore Martinez has fulfilled his exhaustion requirements prior to bringing this instant filing. (See Exhibit A).

## FAMILY ASSISTANCE/SUPPORT

Martinez's family, friends and loved ones are in support of Martinez's early release and ready and willing to assist him in any and every way he needs in order to assure his successful integration back into society and to lessen his chances of recidivism upon his release. Martinez's son, Jose Jr. and his four children, Martinez Sr.'s grandchildren, happily embrace and support the idea of Marinez's early release from custody. Martinez clearly has a sound release plan.

## RELIEF PRAYED FOR

Based on the foregoing in its entirety, Martinez prays this Honorable Court order his immediate release from custody to be followed by the court-imposed supervised release or that this Honorable Court reduce his sentence to a maximum of 24 months left and order his release to home confinement for a term not less than one year(12 months). Also, to be followed by the court-impsed term of supervised release. Said supervised release also ensures Martinez's compliance with the law and this Honorable Court's Order upon his release as his continued freedom is incentive enough to assist Martinez to continue with his law-abiding, positive, and productive way of living out in society as a contributing member of society.

Inmate Work Assignment: Unit Orderly

Martinez was forced to type this instant filing on the institution's cmputer and that the institution offers to send and receive emails, updates, etc. That being the case, the computer doesn't comply with the rules of double space per this Honorable Couurt's rules. Some of the instant filing complies with double-spacing and some doesn't. Martinez prays this Honorable Court forgive the format of the instant filing due to circumstances beyond his control.

I, Jose martinez, swear under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. (28 U.S.C. Section 1746)

Respectfully Submitted,

/s/ Jose Martinez
Jose Martinez
Petitioner--Pro Se